**Docket No. 3:24-CR-00379**

# United States District Court
FOR THE NORTHERN DISTRICT OF NEW YORK
————————»› ‹«————————

**UNITED STATES OF AMERICA,**

*Plaintiff*,

-vs-

**BENJAMIN WHEELER,**

*Defendant.*

------------------------------------------------------------------------

**DEFENDANT BENJAMIN WHEELER'S SENTENCING MEMORANDUM
& MOTION FOR NON-GUIDELINE SENTENCE**

------------------------------------------------------------------------

**Melissa K. Swartz, Esq.**
Bar Roll No. 700599
CAMBARERI & BRENNECK
300 South State Street, 1st Floor
Syracuse, New York 13202
Telephone: (315) 424-8326
Fax: (315) 424-4995
Email: melissa@cambareribrenneck.com



**INTRODUCTION**

The Defendant Benjamin Wheeler ("Benjamin" or "Mr. Wheeler"), by and through his attorney, Melissa K. Swartz, Esq., respectfully submits this Sentencing Memorandum in connection with his sentencing, which is currently scheduled for February 12, 2025.

It is respectfully requested that the Court impose a non-guideline sentence for Mr. Wheeler. As addressed below, a sentence that is "fair and just" and "sufficient, but not greater than necessary, to comply with the basic aims of sentencing" for Mr. Wheeler is one less than the advisory guideline sentence of imprisonment set forth in the Presentence Investigation Report ("PSR") dated December 20, 2024.[1]

At the tender age of 15, Benjamin Wheeler started forming connections with individuals he met online since he was homeschooled and had few social ties outside of his immediate family. Benjamin was the perfect prey for these individuals, who soon introduced the lonely and impressionable Benjamin to fascist ideologies. By 19 years old, Benjamin was fully entrenched in White Lives Matter and Storm-14. This indoctrination led him to the instant firearm possession offense. Before this offense, Benjamin had no criminal history or history of violence.

With six months of incarceration to reflect on his actions and beliefs, he is extraordinarily introspective and remorseful for his conduct. More importantly, he now realizes that his beliefs were wrong. He is a prime candidate for rehabilitation. These, and other circumstances, warrant a sentence of time served with one year of supervised release with special conditions.[2]

---

[1] Mr. Wheeler had an opportunity to review the PSR.
[2] Mr. Wheeler has reviewed and understands the special conditions of supervision.

2

Mr. Wheeler pleaded guilty to Possession of an Unregistered Firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.  *See* PSR at ¶1.  At the time of sentencing, Mr. Wheeler will have served approximately 6 months in the Cayuga County and Delaware County jails.

### ADVISORY SENTENCING GUIDELINE CALCULATION

As set forth in the PSR, an advisory Base Offense Level of 18 and a Criminal History Category of I is calculated. *See* PSR at ¶8.  The Probation Department credited him three-levels for timely acceptance of responsibility (*See* PSR at ¶8), resulting in an advisory Total Offense Level of 15.  The advisory Guideline Range proposed by the Probation Department is 18 to 24 months. *See* PSR at ¶13.  Mr. Wheeler agrees that the advisory Guideline Range is accurate.

### NON-GUIDELINE SENTENCING FACTORS UNDER 18 U.S.C. §3553

Since the Supreme Court's holding in *Gall v. United States*, it has been clear that a sentencing court must consider all of "the kinds of sentences available." 552 U.S. 38 (2007); 18 U.S.C. § 3553(a)(3).  The Court has "very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008).  While the Court must consider the advisory guidelines initially, no special weight is to be given to them over the other facts mentioned in the statute.  *See Kimbrough*, 552 U.S. 85 (2007); *Gall*, 552 U.S. 38.  The Court must effectuate the purposes of sentencing by considering a list of statutorily enumerated factors and rendering a sentence which is sufficient, but not greater than necessary. 18 U.S.C. § 3553(a)(2)(A)-(D).

In determining the particular sentence to be imposed, the Court must consider, among other things, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (i) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (ii) to afford adequate

deterrence to criminal conduct; (iii) to protect the public from further crimes of the defendant; and (iv) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for (i) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission pursuant to § 994(a)(2) of title 28, United States Code; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

Consistent with the principle that "the punishment should fit the offender and not merely the crime," *Williams v. New York,* 337 U.S. 241, 247 (1949), a sentencing judge should "use wide discretion in the sources and types of evidence used to assist them in determining the kind and extent of punishment" to be imposed on a defendant, including "the fullest information possible concerning the defendant's life and characteristics." *Id.* at 246-247; *See Also* 18 U.S.C. § 3661.

### History and Characteristics of Benjamin Wheeler [18 U.S.C. § 3553(a)(1)][3]

The PSR generated by the Probation Department is extremely extensive and detailed. In an effort to avoid repetition, I rely on the information and summary obtained in that report, the Character Letters, and Benjamin's Statement of Responsibility for Benjamin's character and history.

*Familial Support System*

As reflected in the PSR and Character Letters[4] (submitted under separate cover), Benjamin is immensely loved and supported by his family.[6] They recognize that he made a grave mistake and they will work diligently to get him back on the right path. Benjamin is undoubtedly bright, however, he has been unable to achieve his full potential. His parents will ensure that he remains focused.

*Lack of a Criminal History*

Benjamin has zero criminal history. *See United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend."). But for the firearm, albeit a serious offense, Benjamin would qualify as a zero-point offender.

**Nature of the Offense [18 U.S.C. § 3553(a)(1)]**

Benjamin understands the seriousness of this offense. He has admitted responsibility and taken ownership for his conduct. It is important to note that Benjamin has never used any violence.

**Pertinent Policy Statements [18 U.S.C. § 3553(a)(5)]**

Pursuant to U.S.S.G. 5H1.1, "A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of

---

[4]

[6] "Long sentences are also immensely hard on prisoners and cruel to their families, as it's usually very difficult for a prisoner to re-integrate into his family and community after very long prison sentences." Judge Alex Kozinski, *Criminal Law 2.0*, 44 Geo. L.J. Ann. Rev. Crim. Proc. (2015) at page xii-xiii.

educational opportunities, and familial relationships. In addition, **youthful individuals generally are more** impulsive, risk-seeking, and **susceptible to outside influence as their brains continue to develop into young adulthood.** Youthful individuals also are more amenable to rehabilitation.

Here, there is no doubt that Benjamin, at a young age, was influenced by others. White supremacists are known to target teenage males by presenting an offer of brotherhood and community to children who are seeking validation and connection through online forums.[10] Benjamin was the perfect target: young, homeschooled, few friends, and isolated in a rural area.

## REQUEST FOR JUDICIAL RECOMMENDATION

The defense requests that the Court recommend that Bureau of Prisons designate Mr. Pierce be considered for placement close to Syracuse, NY, so he can maintain contact with his family.

## CONCLUSION

"[S]entencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular history and has committed a particular crime." *U.S. v. Harris*, 679 F.3d 1179, 1183 (9th Cir. 2012).

Considering Benjamin's character and lack of criminal history, a total sentence of time-served in prison is sufficient, but not greater than necessary, to punish Benjamin, deter future conduct, and provide him with an opportunity to learn and grow from the special conditions of supervised release, which include mental health counseling.

---

[10] The New York Times, "Racists Are Recruiting. Watch Your White Sons", Oct. 19, 2021, https://www.nytimes.com/2019/10/12/opinion/sunday/white-supremacist-recruitment.html

**Respectfully,**

*Melissa K. Swartz*

**MELISSA K. SWARTZ, ESQ.**